UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH MCCANN, B.M.,
and C.M.,

      Plaintiffs,

v.

      Civil Case No. 18-13495
      Honorable Linda V. Parker

CITY OF DETROIT and
ROBERT NILL,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs filed this action against Defendants on November 9, 2018, asserting claims arising from the shooting of Plaintiffs' American bulldog on November 11, 2015.[1]  Specifically, Plaintiffs allege that Defendants violated their Fourth Amendment rights under 42 U.S.C. § 1983 and committed conversion and intentional infliction of emotional distress.  (ECF No. 5.)  The matter is presently before the Court on Defendants' Motion for Summary Judgment (ECF No. 44), which has been fully briefed (ECF Nos. 47, 48).  In response to the motion,

---

[1] The Court initially struck Plaintiffs' Complaint because it failed to redact the names of the minor children listed as Plaintiffs in violation of Federal Rule of Civil Procedure 5.2(a).  Plaintiffs filed a redacted version of the Complaint on November 15, 2018.  (ECF No. 5.)

Plaintiffs concede that the City of Detroit is entitled to summary judgment with respect to all of Plaintiffs' claims and that Corporal Nill is entitled to summary judgment with respect to their intentional infliction of emotional distress claim. The Court has dispensed with oral argument with respect to the motion. (ECF No. 45.)

## I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

## II. Factual Background

On November 11, 2015, at approximately 4:00 p.m., Corporal Nill responded to a police radio run regarding a home invasion by two individuals at 16125 Lindsay in Detroit. (Police Report at 1, ECF No. 44-2 at Pg ID 351.) Corporal Nill located the subjects and began pursuing them as they fled over the backyard fence of the property and into the fenced backyard of 16127 Gilchrist ("Gilchrist residence"). Plaintiffs—Elizabeth McCann and her two children—resided at the Gilchrist residence with their male American bulldog, Bryce. (Compl. ¶¶ 10, 11, ECF No. 5 at Pg ID 26.)

As Corporal Nill pursued the suspects through Plaintiffs' backyard, Bryce charged at him. (Police Report at 1, ECF No. 44-2 at Pg ID 351.) Corporal Nill reported that Bryce blocked his path, snarled with its teeth bared, and continued to charge at him while snarling when Corporal Nill attempted to continue his pursuit of the subjects. (*Id.*) Believing he had no other option and in fear for his safety, Corporal Nill fired one shot at Bryce, striking him in the head. (*Id.*) No other individuals were within range of Bryce when Corporal Nill shot him. (*Id.*) Ms. McCann, who heard the gunshot, went outside but Corporal Nill told her it was not

safe and to go back in the house. (McCann Dep. at 18-19, ECF No. 47-2 at Pg ID 415.) Corporal Nill then left the yard through the open gate in the direction of where the suspects fled. (Police Report at 1, ECF No. 44-2 at Pg ID 351.)

By this time, multiple police officers had converged on the area to locate the suspects. (*Id.*) Other officers eventually located the suspects a few blocks away. (Arrest Report at 1, ECF No. 48-1 at Pg ID 435.) Witnesses identified the men as the individuals seen trying to break into 16126 Lindsay and they were arrested. (*Id.*)

In the meantime, Corporal Nill spoke with Plaintiff Elizabeth McCann. Bryce was still alive, and Ms. McCann indicated that she was going to transport him to an emergency veterinary hospital. (*Id.*) Bryce eventually died from the gunshot wound. (Compl. ¶ 26, ECF No. 5 at Pg ID 27.)

According to Ms. McCann, she was driving one of her children home from school at about 3:10 p.m. on November 11. (McCann Dep. at 62, ECF No. 47-2 at Pg ID 418.) As they were approaching home, at what Ms. McCann estimated was around 3:45 p.m., she observed two men walk down the driveway of the house of her next-door neighbor, Eugene, and enter a vehicle parked on the street. (*Id.*) Ms. McCann then pulled into her driveway, up to the closed gate to her backyard. (*Id.* at 68, 71, 132, 135, Pg ID 419, 420, 422, 423.)

Ms. McCann then entered her home with her son and let Bryce outside into the backyard. (*Id*. at 18, Pg ID 415.) While Bryce was outside, Ms. McCann stood at the kitchen sink getting water for her son. (*Id*.) She was looking out the kitchen window, which faced her driveway and Eugene's house, when she heard a loud sound. (*Id*. at 18-19, 133, 136, Pg ID 415, 422, 423.) Ms. McCann never saw anyone run through her driveway during the incident. (*Id.* at 137, Pg ID 423.) Ms. McCann went outside and saw Bryce laying on the grass and Corporal Nill in her backyard. (*Id*. at 19, Pg ID 415.)

### III.   Applicable Law & Analysis

Based on Plaintiffs' concessions in response to Defendants' summary judgment motion, only their § 1983 and conversion claims against Corporal Nill require analysis. Plaintiffs' Fourth Amendment claim is based on the alleged unlawful seizure of Bryce.[2] (*See* Compl. ¶¶ 43-55, ECF No. 5 at Pg ID 29-31.)

#### A.   § 1983 Fourth Amendment Violation

"Section 1983 establishes 'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 656 (6th

---

[2] Plaintiffs do not allege that Corporal Nill violated their rights by entering their backyard.

6

Cir. 1994)). A plaintiff asserting a § 1983 claim must show: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Qualified immunity "shields 'government officials performing discretionary functions … from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

A court makes two inquiries when determining whether a defendant is entitled to qualified immunity: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right "clearly established" to the extent that "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Defendant acknowledges clearly established law in the Sixth Circuit holding that individuals have a Fourth Amendment constitutional right "to not have one's dog unreasonably

seized (shot)[.]" (Defs.' Mot. at 4, ECF No. 44 at Pg ID 312.) Thus, the Court focuses on whether Corporal Nill violated that right.

The Sixth Circuit has stated that a dog is property, and the unreasonable seizure of a dog runs afoul of the Fourth Amendment. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (2016). "'A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Courts have held that there is no unreasonable seizure when an officer kills a dog *if* the dog "'posed an imminent danger and the use of force is unavoidable.'" *Id.* (quoting *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016)) (brackets omitted, additional quotation marks and citations omitted).

"'Reasonableness is the touchstone of any seizure under the Fourth Amendment.'" *Id*. at 567 (quoting *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005)). Reasonableness is judged "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. (quoting *Robinson*, 818 F.3d at 8) (additional citations and quotation marks omitted); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989). "'This analysis allows for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation.'" *Id*. The court must "'put itself in the shoes of the officers at the time the actions took place and to ask whether the actions taken by the officer were objectively unreasonable.'" *Id.* (quoting *Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003)).

Defendants maintain that exigent circumstances—pursuit of the fleeing suspects—justified Corporal Nill's intrusion into Plaintiffs' fenced in yard, which led to his encounter with Bryce. It is well established that the Fourth Amendment's protection from unreasonable searches and seizures extends to the "curtilage" of one's home, and that the fenced-in backyard, near the home, is within the curtilage. *See United States v. Jenkins*, 124 F.3d 768, 772-73 (6th Cir. 1997). It also is well established that an officers' intrusion into or onto an individual's property does not violate the Fourth Amendment where the officer is in hot pursuit of a fleeing felon. *See United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)).

Plaintiffs challenge the veracity of Corporal Nill's statement that he was pursuing two individuals when he entered their backyard and encountered Bryce. (Pls.' Resp. at 10, ECF No. 47 at Pg ID 400.) Ms. McCann claims that she was able to see whether anyone exited her backyard through her driveway and that "no individual(s) ran pass [sic] her window, nor did anyone jump the gate to exit her

9

property." (*Id.*) Plaintiffs assert that "[t]here were no individuals arrested or seen by any other officers or neighbors." (*Id.*)

Corporal Nill never stated that the individuals fled Plaintiffs' backyard in the direction of the gate and driveway, however. In fact, the record does not reflect the direction the suspects exited Plaintiffs' yard. Plaintiffs cite no evidence for their other assertions and those assertions are in fact contrary to the evidence. Witnesses reported the two individuals attempting to break into the residence on Lindsey and police reports reflect that the suspects were apprehended after Corporal Nill shot Bryce in Plaintiffs' backyard.

Plaintiffs also argue that Corporal Nill could have gained access to the yard next door instead of jumping their fence. Yet this ignores Corporal Nill's undisputed claim that the suspects entered *Plaintiffs'* yard, and thus he did too while pursuing them. Plaintiffs nevertheless maintain that Corporal Nill could have retreated from the yard after encountering Bryce (*id.* at 11, Pg ID 401); however, Plaintiffs have no proof to suggest that this was an option available to him. Ms. McCann does not claim to have witnessed Corporal Nill's entry into her yard; nor does she claim to have witnessed his encounter with Bryce before Bryce was shot. As such, Plaintiffs cannot show that Corporal Nill had the opportunity to escape the yard or Bryce.

10

Thus, the question is whether Bryce posed an imminent threat to Corporal Nill when Corporal Nill shot him. The only evidence presented with respect to this issue is Corporal Nill's report that Bryce charged at him, snarling, with his teeth bared. According to Ms. McCann, Bryce would have barked if anyone entered the backyard and she did not hear him bark. Yet there is no dispute that Corporal Nill did enter the backyard. Thus, Ms. McCann is wrong about whether Bryce would have barked, or she simply did not hear him.

To counter Corporal Nill's description of what occurred, Plaintiffs also assert, citing Ms. McCann's deposition testimony, that Bryce was less than six feet from the back steps of the house and not near or toward the fence when Ms. McCann went outside after hearing the gunshot. (Pls.' Resp. at 16, ECF No. 47 at Pg ID 406.) However, such evidence is not contained in the partial transcript of Ms. McCann's deposition that Plaintiffs submitted—the only evidence they presented in response to Defendants' motion.[3] Even assuming that Ms. McCann did observe Bryce laying within six feet of the house when she went into the backyard, there is nothing to indicate whether he was in the same location when Corporal Bryce shot him. Moreover, Corporal Nill never stated that Bryce was near or at the fence when the encounter occurred. Rather, Corporal Nill reported

---

[3] Ms. McCann testified that, when she went outside after hearing a loud sound, she saw Bryce laying on the grass. (McCann Dep. at 19, ECF No. 47-2 at Pg ID 415.) There is no indication where Bryce was in the backyard or relative to the house.

11

...

only that Bryce charged at him while he "proceeded after the suspects" through Plaintiffs' yard.[4] (Police Report at 1, ECF No. 44-2 at Pg ID 351.)

Plaintiffs fail to rebut Corporal Nill's description that Bryce, a "large"[5] bulldog, charged at him while snarling and baring his teeth. While Plaintiffs assert that there was a doghouse "in plain view" in the yard to alert Corporal Nill of Bryce's presence, they cite no evidence to support this fact. (*See* Pls.' Resp. Br. at 11, ECF No. 47 at Pg ID 401.) Nor did the Court find such a factual assertion in its search through the evidence. But even if true, there is nothing suggesting that Corporal Nill in fact saw the doghouse before he entered the yard in pursuit of the suspects or that he had any other warning of Bryce's presence before Bryce charged at him and he found himself unable to retreat. Under these undisputed circumstances, a reasonable jury could only conclude that Bryce posed an

---

[4] In Defendants' brief, they write that Corporal Nill was confronted by Bryce "immediately after jumping the fence into [P]laintiffs' backyard." (Defs.' Mot. at 1, ECF No. 44 at Pg ID 309.) This specific description is not in the evidence, however. When relaying the incident in his police report, Corporal Nill wrote only: "I was pursuing 2 subjects for a home invasion… on foot as they fled east bound over the fence behind 16126 Lindsay and into the back yard of 16127 Gilchrist. *As I proceeded after the suspects* a large white and brown American bulldog charged at me, blocking my path and snarling with his teeth bared. …" (Police Report at 1, ECF No. 44-2 at Pg ID 351 (italics added, capitalization removed).)

[5] Bryce's height and weight are not reflected in the record. According to the American Kennel Club, male American bulldogs generally range from 22-15 inches in height and 75-100 pounds. https://www.akc.org/dog-breeds/american-bulldog/.

imminent threat that justified Corporal Nill's decision to shoot. *See Brown*, 844 F.3d at 572; *see also Bletz v. Corrie*, 974 F.3d 306, 311 (3d Cir. 2020) (finding that officer "reasonably used lethal force against a dog who, unrebutted testimony shows, aggressively charged at him, growled, and show his teeth, as though about to attack.").

Corporal Nill is therefore entitled to summary judgment with respect to Plaintiffs' Fourth Amendment claim.

### B. Conversion

The Michigan courts define conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992) (citations omitted). "In general, it is viewed as an intentional tort in the sense that the converter's actions are wilful, although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Id*. There is no liability for conversion if the defendant is privileged to dispose of the chattel. *Thoma v. Tracy Motor Sales, Inc.*, 104 N.W.2d 360, 362 (Mich. 1960).

Defendants maintain that Corporal Nill had the privilege of self-defense as justification for shooting Bryce. (Defs.' Mot. at 16, ECF No. 44 at Pg ID 324.) Defendants also point to Section 6-2-1(c) of the Detroit City Code, which authorizes police officers to dispose of unlicensed dogs in accordance with their

duties to enforce state and local laws regarding pet licensing. (*Id.*) As to the latter argument, there is a genuine issue of material fact as to whether Bryce was licensed, as Ms. McCann testified that he was. (McCann Dep. at 43, ECF No. 47-2 at Pg ID 417.) Nevertheless, regardless of whether Bryce was licensed or unlicensed, Michigan law allows a police officer to kill a dog pursuing or attacking a person. Mich. Comp. Laws § 287.279.

Moreover, Corporal Nill also is entitled to immunity under the common law. A governmental officer is entitled to immunity from an intentional tort if:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). "The good-faith requirement 'imposes a subjective test for governmental immunity for intentional torts, based on the officials' state of mind, in contrast to the objective test for federal qualified immunity.'" *Richards v. City of Jackson*, 788 F. App'x 324, 336 (6th Cir. 2019) (quoting *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015)); *see also Odom*, 760 N.W.2d at 229.

14

Corporal Nill was acting in his capacity as a City of Detroit police officer, pursuing criminal suspects, when he shot Bryce. There is no evidence suggesting that he was acting with malice. Finally, as *Odom* reflects, Corporal Nill's actions were discretionary as they "'require[d] personal deliberation, decision, and judgment.'" *Odom*, 760 N.W.2d at 226 (quoting *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 668 (Mich. 1984)) (brackets added).

For these reasons, Corporal Nill is entitled to summary judgment with respect to Plaintiffs' conversion claim.

## IV. Conclusion

Plaintiffs concede that the City of Detroit is entitled to summary judgment with respect to their federal and state law claims. Plaintiffs also concede that Corporal Nill is entitled to summary judgment with respect to their intentional infliction of emotional distress claim. For the reasons set forth above, the Court concludes that Corporal Nill is entitled to summary judgment with respect to Plaintiffs' § 1983 and conversion claims, as well.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is

**GRANTED**.

    **IT IS SO ORDERED**.

                                      s/ Linda V. Parker
                                      LINDA V. PARKER
                                      U.S. DISTRICT JUDGE

Dated: February 9, 2021